RADER, Circuit Judge.
 

 The United States appeals the United States Court of Federal Claims’ grant of summary judgment in favor of Houston Industries Incorporated (Houston). In its taxpayer refund suit, Houston contended that fuel cost overrecoveries and the interest accrued thereon are not income. On cross motions for summary judgment, the Court of Federal Claims agreed with Houston.
 
 See Houston Indus. Inc. v. United States,
 
 32 Fed. Cl. 202 (1994). Because the law entitles Houston to judgment, this court affirms.
 

 I.
 

 Houston Lighting & Power Company (HL & P), a subsidiary of Houston, provides electric service to customers in the Texas gulf coast region. Texas law subjects HL & P to the regulation and supervision of the Public Utility Commission of Texas (PUC). PUC administers a number of Texas laws, including the calculation of actual, reasonable fuel costs, which are reimbursable as a portion of the customer’s electric bill.
 

 Before 1983, PUC did not heavily regulate the recovery of fuel costs. HL & P used its own estimates to calculate the fuel cost component of a customer’s bill. When these estimates caused overrecoveries (customer payments in excess of actual fuel costs) or underrecoveries (actual fuel costs in excess of customer payments), HL & P compensated with an automatic fuel adjustment. Under an automatic fuel adjustment, HL & P refunded overrecoveries by decreasing one of the customer’s next bills and collected for underrecoveries by increasing one of the next bills.
 

 The dramatic increase in the cost of natural gas in the early 1980’s raised the price of electricity. Power consumers charged that automatic fuel adjustments added to the electricity price increase and caused the amount of electric bills to fluctuate substantially from month-to-month. In response to this political complaint, the Texas legislature "amended section 43(g) of the Public Utility Regulatory Act, Tex.Rev.Civ. Stat. Ann. Art. 1446c (Vernon 1980), to prohibit the use of automatic fuel adjustments after September 1983.
 

 
 *1443
 
 Instead, PUC instituted a “fixed fuel factor” system.
 
 See
 
 PUC Rule 23.23 (1983). Under this system, PUC assigned a fixed charge per kilowatt hour to each utility. PUC determined this charge by “dividing the actual, unadjusted fuel costs by actual, unadjusted sales” for the preceding twelve months.
 
 See
 
 PUC Rule 23.23(b)(2). A utility would use the same fixed fuel factor until PUC authorized a change.
 
 See
 
 PUC Rule 23.23(b)(2). A utility could not request a rate change for at least twelve months.
 
 See
 
 PUC Rule 23.23.
 

 Additionally, as a utility was only allowed to retain its actual fuel costs, PUC provided a reconciliation procedure to account for the inevitable underrecoveries or overrecoveries.
 
 See
 
 PUC Rule 23.23(b)(2)(I). During a reconciliation, the utility compensates its customers for any overrecoveries and may petition to recoup underrecoveries.
 
 *
 
 PUC required the utilities to pay interest on overrecoveries at the utility’s “composite cost of capital during the period the rates were in effect.”
 
 See id.
 
 The utilities had little control over the timing of these reconciliations, which did not necessarily correspond to the end of the calendar or tax year.
 

 The Court of Federal Claims found that HL & P recorded its overrecoveries and underrecoveries for each month in a deferred credit book account. The balance of this cumulative account increased or decreased each month depending on whether HL & P overrecovered or underrecovered for that month. If the cumulative balance in the account was a net overrecovery, HL & P would credit interest to its customers. Conversely, if the cumulative balance was a net underrecovery, HL & P would credit itself with interest.
 

 Soon after PUC implemented these new requirements, natural gas prices and HL & P’s associated fuel costs substantially declined. As required by the fixed fuel factor system, HL & P maintained its fuel cost charges and could not pass on any savings to its customers. As a result, HL & P accumulated fuel cost overrecoveries of $20,942,090 for 1983, and $77,361,286 for 1984. HL & P filed a request to refund its overrecoveries as of April 30,1984. HL & P, after approval by PUC, refunded $72,743,791, including"1 overrecoveries and interest thereon through April 30, 1984. HL & P made these refunds to its then-active customers by crediting their bills for the months of August through December 1984. HL & P could not achieve a perfect correspondence between the customers who contributed toward the overrecovery and the customers who ultimately received a refund. Customers may have left the state, died, or otherwise terminated their account with HL & P without leaving forwarding information. In 1985, HL & P refunded an additional $147,911,623, including overrecoveries and interest thereon, to its customers. Unlike the previous refund, HL & P remitted refund checks directly to each customer.
 

 The Court of Federal Claims found that HL & P adhered to the Statement of Financial Accounting Standards No. 71 in its handling of these overrecoveries, which required it to record the overrecovery balance as a liability rather than treating it as income. For instance, in financial statements filed with the Securities and Exchange Commission and provided to stockholders, Houston and HL & P characterized the overrecoveries as a liability to HL & P. In the case of internal accounting records, HL & P initially classified its fuel cost overrecovery balance as a contra-asset upon receipt and then reclassified that balance as a deferred credit at the end of each fiscal year. When HL & P received an order from PUC to refund the overrecovery balance, it reclassified the balance to be refunded as a current liability. Further, HL & P consistently reported the accrued interest on the overrecoveries as a liability for both tax and accounting purposes.
 

 When Houston filed its income tax returns for tax years 1983 and 1984, it did not include the fuel cost overrecoveries for those years in its income. Houston also deducted the interest accrued on those overrecoveries from its income. The Internal Revenue Service (ITS)
 
 *1444
 
 assessed Houston with deficiencies of $1,563,-018 for 1983 and $60,028,287 for 1984, based on the inclusion of the overrecoveries in Houston’s income and the denial of Houston’s deduction for interest liability. Houston paid the assessed deficiencies plus interest in July 1990, then, later that same month, filed a claim for a refund. When the its did not formally act on Houston’s refund claim, Houston executed a Waiver of Statutory Notice of Claim Disallowance on July 19, 1991. Houston then filed suit in the Court of Federal Claims, under the Tucker Act, 28 U.S.C. § 1491 (1988), and section 7422 of the Internal Revenue Code of 1986, 26 U.S.C. § 1 (1986), seeking a tax refund of $1,493,584 for 1983 and $51,620,043 for 1984, plus interest. The parties filed cross-motions for summary judgment on the characterization of the fuel cost overrecoveries. The trial court held in favor of Houston and entered judgment for refunds of $2,806,149.73 and $79,682,109.11, respectively, for 1983 and 1984. The United States appealed.
 

 II.
 

 A grant of summary judgment by the Court of Federal Claims is subject to “complete and independent review.”
 
 IU Int’l Corp. v. United States,
 
 116 F.3d 1461, 1464 (Fed.Cir.1997);
 
 see also Armitage v. United States,
 
 991 F.2d 746, 748 (Fed.Cir.1993). As the parties do not dispute any material facts, the question of whether fuel cost overrecoveries are income controls the outcome of this case.
 

 On appeal, the Government argues that the overrecoveries are income because HL & P’s obligation to repay was contingent on no underrecoveries to balance the fuel costs before a reconciliation order. Underrecoveries might off-set overrecoveries. Because the end of the tax year does not correspond with reconciliation periods, HL & P cannot ascertain with any certainty the amount of overpayments it may be required to refund when the reconciliation occurs. Therefore, the Government contends these overreeoveries are income at the end of the tax year.
 

 Houston, on the other hand, argues that money burdened by an obligation to repay is not income. According to HL & P, it received the overrecoveries subject to an unconditional obligation to refund the money to customers by either providing refunds or offsetting underrecoveries. Thus, HL & P contends that only the method of repayment, not whether repayment will occur, is uncertain at the end of the tax year.
 

 26 U.S.C. § 61(a) (1994) defines gross income as “all income from whatever source derived.” Section 61(a) then sets forth a non-exclusive list of income sources. While fuel cost overrecoveries could conceivably fall under the “Gross income derived from business” category,
 
 see
 
 26 U.S.C. § 61(a)(2), this begs the question. Although title 26 evinces an expansive view of gross income,
 
 see James v. United States,
 
 366 U.S. 213, 219, 81 S.Ct. 1052, 1055, 6 L.Ed.2d 246 (1961) (the tax code covers as income gains not specifically exempted), no provision of the tax code expressly defines these overrecoveries as income.
 

 The Supreme Court, however, has provided a number of tests for gross income. Gross income includes all “undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion.”
 
 Commissioner v. Glenshaw Glass Co.,
 
 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955). The Court has stated the test for complete dominion is “not whether ... use of the funds is unconstrained during some interim period. The key is whether the taxpayer has some guarantee that he will be allowed to keep the money.”
 
 Commissioner v. Indianapolis Power & Light Co.,
 
 493 U.S. 203, 210, 110 S.Ct. 589, 593,107 L.Ed.2d 591 (1990). With this basic test in mind, this court examines the application of that standard to similar fact situations.
 

 The closest Supreme Court case dealing with the definition of taxable income is
 
 Indianapolis Power & Light.
 
 In that case, a utility required customers having' suspect credit to deposit funds in advance to assure prompt payment of future electric bills.
 
 Id.
 
 at 204, 110 S.Ct. at 590. Customers who later regained acceptable credit status could receive an immediate refund of the deposit or a credit against future payments.
 
 Id.
 
 at 204-05, 110 S.Ct. at 590-91. These customers, not the utility, controlled the method of repayment.
 
 Id.
 
 The utility could not know,
 
 *1445
 
 at the time of payment or at the end of the tax year, which method of payment the customer would elect.
 
 Id.
 
 The Supreme Court held that these deposits were not taxable income because the utility did not have “complete dominion” over the money at the time it was paid.
 
 Id.
 
 at 209, 110 S.Ct. at 593. In other words, the contingencies governing whether the utility would retain the deposit depended on events outside of its control.
 
 Id.
 

 Two cases from United States Courts of Appeals, one from this circuit and one from the 7th Circuit, also explicate these distinctions. In
 
 Illinois Power Co. v. Commissioner,
 
 792 F.2d 683 (7th Cir.1986), our sister circuit held that a rate increase ordered by the state utility commission was not income. In that case, the state commission ordered the utilities to increase their rates to certain commercial customers as a means of encouraging them to seek lower priced substitutes.
 
 Id.
 
 at 687. After this artificial rate increase, the commission ordered the utilities to hold these excess collections until the agency decided what to do with the funds.
 
 Id.
 
 at 688. Upon later reordering a repayment, the commission also required the utilities to pay full interest.
 
 Id.
 
 The court, in finding that the rate increase payments were not income, stressed the fact that the increase was to promote gas conservation, not for the benefit of the utility, and that the utility was merely the custodian of the funds.
 
 Id.
 
 at 689-90.
 

 In the other circuit court case,
 
 Iowa Southern Utilities v. United States,
 
 841 F.2d 1108, 1113 (Fed.Cir.1988), this court held that a special construction surcharge, which was refunded over thirty years, without interest in the form of a negative surcharge, was taxable income. In distinguishing the persuasive authority of
 
 Illinois Power,
 
 this court noted that the rate increase was for the benefit of the utility — to finance construction — and the utility paid no interest on the funds.
 
 Id.
 
 at 1112. Further unlike
 
 Illinois Power,
 
 this court perceived no “unequivocal contractual, statutory, or regulatory duty to repay” the funds.
 
 Id.
 
 at 1112 (quoting
 
 Illinois Power,
 
 792 F.2d at 689). In sum, this court recognized that the
 
 Illinois Power
 
 utility, unlike the
 
 Iowa Southern
 
 utility, had in effect established a fiduciary relationship with the ratepayers and derived no benefit from retention of the money.
 
 Id.
 

 In this case, the overrecoveries more closely resemble the deposits in
 
 Indianapolis Power & Light
 
 and the rate increases in
 
 Illinois Power
 
 than the surcharges in
 
 Iowa Southern.
 
 First, the utility in the instant case, like the utilities in both
 
 Indianapolis Power & Light
 
 and
 
 Illinois Power,
 
 derived no benefit from retaining the overpayments. The stated purpose of the fixed fuel cost system is to increase the predictability and stability of monthly fuel charges for the benefit of customers, not the utility. In fact, the utilities, burdened by additional accounting and administrative responsibilities, derived little or no benefit under this system. Moreover HL & P accounted for full interest on the overrecoveries and petitioned to initiate a repayment when the overrecovery balance became excessive. Under these circumstances, HL & P acted as a custodian of these funds.
 

 Next, unlike the
 
 Iowa Southern
 
 utility, HL
 
 &
 
 P received these overrecoveries contingent upon a statutory obligation of repayment.
 
 See
 
 PUC Rule 23.23(b)(2)(I). Although the regulations could require HL & P to offset its overrecoveries against later underrecoveries, this alternative method of repayment is not the kind of contingency which affects HL & P’s obligation to repay. The Court in
 
 Indianapolis Power & Light,
 
 in a case presenting even more repayment options, focused on the “express ‘obligation to repay’ ” at the time of collection, not on the alternative forms of repayment.
 
 Indianapolis Power & Light,
 
 493 U.S. at 210-11, 110 S.Ct. at 593-94. Although an off-set against underre-' eoveries is not technically the same as a direct refund, both methods of repayment have the same economic effect. After all, HL & P operates in a highly regulated field, just as the utility in
 
 Indianapolis Power & Light,
 
 which guarantees repayments regardless of the method for repayment..
 
 Id.
 
 at 213, 110 S.Ct. at 595. While HL & P could not be certain, at the end of the tax years in question, of the method of repayment, its obligation to repay, with interest, was set at the time of overpayment. The obligation to
 
 *1446
 
 repay controls this analysis. Thus, the overrecoveries are not taxable income.
 

 III.
 

 Because HL & P received these overrecoveries contingent upon a statutory obligation of repayment, with interest, by either off-set of underrecoveries or refund, and because HL & P collected these overrecoveries pursuant to a fixed fuel cost system intended to benefit the customers rather than the utility, HL & P did not exercise complete dominion over the money. Under these circumstances, HL & P acted in a custodial role. Thus, this court affirms the Court of Federal Claims’ decision that these overrecoveries do not constitute taxable income.
 

 COSTS
 

 Each party shall bear its own costs.
 

 AFFIRMED.
 

 *
 

 Utilities could only recoup "that portion of fuel costs increased by conditions or events beyond the control of the utility and upon demonstration of proof by the utility that such conditions or events could not have been predicted or foreseen at the time the rates were established.”
 
 See
 
 Public Utility Commission of Texas Rule 23.23(b)(2)(f).