T.C. Memo. 1998-419


UNITED STATES TAX COURT


AMERICAN VALMAR INTERNATIONAL LTD., INC., ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos.   11776-95, 11777-95,   Filed November 19, 1998.
              16318-96, 16319-96.


        An individual and his wholly owned corporation
each received wire transfers of U.S. dollars from
within the former Soviet bloc of countries.  Ps claim
that the wire transfers to the individual were part of
a ruble hoard accumulated before he came to the United
States and the wire transfers to the corporation were
deposits received in the corporation's business as a
commission agent.  R treated all the wire transfers as
gross income to the corporation and treated the amounts
received by the individual as distributions from the
corporation.  R also disallowed certain deductions of
the corporation and imposed accuracy-related penalties
and delinquency additions.
        Held:  Wire transfers to corporation and some of
wire transfers to the individual are gross income to

---

[1]    The cases of the following petitioners are consolidated
herewith:  Valeri Markovski, docket Nos. 11777-95 and 16319-96;
American Valmar International, Ltd., Inc., docket No. 16318-96.

corporation; held, further, P had constructive dividend; held, further, all but one deduction disallowed; held, further, accuracy-related penalties sustained; held, further, delinquency addition sustained.

Ira B. Stechel and Thomas J. Fleming, for petitioners.

Daniel O'Brien and Patrick E. Whelan, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  These cases have been consolidated for trial, briefing, and opinion.  By separate notices of deficiency, respondent had determined deficiencies in, additions to, and penalties with respect to the Federal income taxes of petitioners Valeri Markovski (Markovski) and American Valmar International, Ltd., Inc. (American Valmar) as follows:

| Petitioner | Year[1] | Deficiency | Additions to tax Sec. 6651(a)(1) | Sec. 6662(a) |
|---|---|---|---|---|
| Markovski | 1991 | $248,662 | -- | $49,732 |
|  | 1992 | 499,989 | -- | 99,998 |
| American | 1991 | 814,158 | $203,270 | 162,832 |
| Valmar | 1992 | 1,125,466 | 280,827 | 225,093 |
|  | 1993 | 190,569 | 46,485 | 38,114 |

[1] American Valmar's taxable year is a fiscal year ending June 30.  Markovski is an individual taxpayer whose taxable year ends Dec. 31.

After concessions, the issues for decision with respect to American Valmar are:

(1) Whether American Valmar had gross income on account of receipts of $1,426,653, $1,507,440, and $32,335, during 1991, 1992, and 1993, respectively.

(2) Whether American Valmar had gross income on account of deposits to bank accounts of its sole shareholder, Markovski.

(3) Whether American Valmar is entitled to additional deductions for business expenses of $291,293, $104,894, and $399,828 for 1991, 1992, and 1993, respectively.

(4) Whether American Valmar is subject to accuracy-related penalties for 1991, 1992, and 1993.

(5) Whether American Valmar is subject to delinquency additions for 1991, 1992, and 1993.

The issues for decision with respect to Markovski are:

(1) Whether Markovski had gross income on account of constructive dividends of $670,547, and $1,600,000 received from American Valmar during 1991 and 1992, respectively.

(2) Whether Markovski is subject to accuracy-related penalties for 1991 and 1992.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Introduction

Some of the facts have been stipulated and are so found. The stipulations of fact filed by the parties, with accompanying exhibits, are incorporated herein by this reference. At the time the petitions were filed, American Valmar maintained its

principal office in New York, New York, and Markovski resided in Fort Lee, New Jersey.

## Markovski

Markovski was born in Dniepepetrovsk, U.S.S.R., in 1945. In 1989, he emigrated to the United States, and, in 1995, he became a U.S. citizen. Prior to emigrating to the United States, he accumulated a substantial hoard of rubles (the ruble hoard). The ruble hoard was, in part, attributable to Markovski's sale of Soviet government securities and inherited jewelry.

## American Valmar

American Valmar, a New York corporation, was organized in 1989. Markovski is the sole shareholder of American Valmar.

During its taxable years here in issue, American Valmar was engaged as a commission broker, purchasing goods in the United States for export to customers located in the former Soviet Union. It had four customers: Video Computer, a Moscow-based trading company engaged in the sale of electronic goods; Diapazon, also a Moscow-based trading company; Interrosa, a Ukraine-based trading company; and Kond Petroleum, a company in the oil business in Siberia. American Valmar filed Federal income tax returns for the years in issue. On those returns, it did not report gross sales and cost of goods sold. The only income reported by it was commission income of between 5 and 8 percent of the dollar amount of purchases made for customers.

The books and records of American Valmar reflect the receipt of incoming wire transfers of American currency as credits to an account denominated "accounts payable-contracts" (contracts payable). At year's end, amounts expended by American Valmar for customer purchases, otherwise disbursed at the request of customers, or refunded to customers, together with commissions earned, were debited to contracts payable. Credit balances in the contracts payable account at the end of American Valmar's 1991, 1992, and 1993 taxable years were $1,426,653, $2,934,093, and $2,966,428, respectively. For each of those years, the following table shows amounts credited to contracts payable, debits on account of purchases made and commissions charged, and the yearend excess of such credits over such debits:

|  | 1991 | 1992 | 1993 |
|---|---|---|---|
| Credits to contracts payable: | $2,365,494 | $3,406,539 | $1,709,983 |
| Less: |  |  |  |
| Purchases: | 894,134 | 1,793,669 | 1,553,378 |
| Commissions: | 44,707 | 105,430 | 124,270 |
| Excess amount: | 1,426,653 | 1,507,440 | 32,335 |

At the time American Valmar received funds from customers, it did not necessarily have instructions as to how those funds were to be used. Funds received from customers were held in interest-bearing accounts or used to purchase U.S. Treasury bills until disbursed. American Valmar retained all interest earned.

The Fort Lee Residence

On May 30, 1991, Markovski purchased a condominium apartment in Fort Lee, New Jersey (the condominium), for $604,150.

Previously, Markovski had rented the condominium. During 1991, American Valmar spent at least $57,137 for improvements to and home furnishings for the condominium. That $57,137 was debited to contracts payable. Subsequently, Markovski sold the condominium and purchased another apartment in the same building. The improvements to the condominium and some of the furnishings purchased for it remained in the condominium when it was sold.

American Valmar's Bank Accounts

During the years in issue, American Valmar maintained the following bank accounts:

| Bank | Account Number | (Reference) |
|------|----------------|-------------|
| Chemical | 136-004725 | Chem. 1 |
| Manufacturers Hanover | 134-0721145-65 | ManH. 1 |

Markovski's Bank Accounts

During the years in issue, Markovski maintained the following bank accounts:

| Bank | Account Number | (Reference) |
|------|----------------|-------------|
| Chemical | 136-336213 | Chem. 2 |
| Manufacturers Hanover | 063-0647792-65 | ManH. 2 |

Wire Transfers to American Valmar

American Valmar received wire transfers of U.S. dollars as follows:

| Date | Account | Amount | Originator | Identification |
|------|---------|--------|------------|----------------|
| 8/27/90 | ManH. 1 | $477,988 | Bank of Fgn. Econ. Affairs, Moscow | Contract June 25, 1990, Ordering Customer, Video-computer, Moscow |
| 8/27/90 | ManH. 1 | 9,988 | Bank of Fgn. Econ. Affairs, Moscow | Videocomputer, Ordering Customer |
| 12/18/90 | ManH. 1 | 499,988 | Lloyds Bank, London England | Air Foyle Ltd., Luton Airport |
| 12/24/90 | ManH. 1 | 683,468 | Bank of Fgn. Econ. Affairs, Moscow | Re: Videocomputer |
| 12/26/90 | Chem. 1 | 58,860 | Bank of Fgn. Econ. Affairs, Moscow | Firms Invoice, Invoice for Supplied Equip. |
| 1/22/91 | Chem. 1 | 700,000 | DBS Bank, Singapore | According to Agreement 12/28/90 |
| 1/25/91 | ManH. 1 | 99,982 | Energologila, Kiev | Equipment Contract Kiev, 14/20/90 - Ukranian Prod. Assoc. |
| 6/06/91 | ManH. 1 | 145,220 | -- | Ukranian Production Associates; Contract 14 Dec 90 |
| 6/21/91 | ManH. 1 | 140,000 | -- | Rem Kiev; Equipment Contract 14-12-90 |

During April and May 1991, the following wire transfers of U.S. dollars were made to Markovski's personal bank accounts:

| Date | Account | Amount | Originator | Identification |
|------|---------|--------|------------|----------------|
| 4/22/91 | ManH. 2 | $315,591 | Ykrainian Production Assoc. | Beneficiary - American Valmar. Equipment Contract 14-12-90 |
| 5/24/91 | ManH. 2 | 133,800 | Ykrainian Production Assoc. | For Equip. Contract 14-12-90 |
| 5/31/91 | ManH. 2 | 50,500 | Bank for Fgn. Econ. Affairs, Moscow | Beneficiary: American Valmar |
| 5/23/91 | Chem. 2 | 113,519 | Bank for Fgn. Econ. Affairs, Moscow | By Order - Interrosa |

During American Valmar's 1992 taxable year, the following wire transfers of U.S. dollars were made from Budapest Hungary to American Valmar's accounts:

| Date | Account | Amount | Originator |
|------|---------|--------|------------|
| 10/30/91 | Chem. 1 | $1,700,000 | Hungarian Fgn. Trade Bank |
| 1/17/92 | Chem. 1 | 1,700,000 | -- |

In July 1991 and March 1992 the following wire transfers of U.S. dollars were made from the former Soviet Union and Budapest, Hungary, to Markovski's personal bank accounts:

| Date | Account | Amount | Originator | Identification |
|------|---------|--------|-----------|----------------|
| 7/1/91 | ManH. 2 | $52,730 | Rem Kiev | Beneficiary - American Valmar. Equipment Contract 14-12-90 |
| 7/12/91 | ManH. 2 | 80,200 | Bank of Fgn. Econ. Affairs, Moscow | Beneficiary - American Valmar Equipment Contract 14 Dec 1990 |
| 3/5/92 | Chem. 2 | 1,600,000 | Hungarian Fgn. Trade Bank | Order: ANSA/SZEGED |

Wire Transfer to Mila Panarey

On April 2, 1993, American Valmar wired $24,500 to the account of Mila Panarey.  Ms. Panarey is a housewife who, at the time of the trial, lived in Philadelphia, Pennsylvania. Ms. Panarey is the cousin of Ludmila Piker, who was a consultant for American Valmar from 1990 through at least 1995, and who is Markovski's stepdaughter.  The $24,500 transmitted to Ms. Panarey was sent pursuant to an agreement whereby Ms. Panarey would receive the funds and immediately return them to her cousin, Ms. Piker.  Ms. Panarey did return the funds to her cousin.

Transfers to Manufacturer's Hanover Bank Account

During its 1993 taxable year, American Valmar transferred $337,000 to a Manufacturer's Hanover bank account in the name of Anatoly Seregin.

American Valmar's Federal Income Tax Returns

Simon Bolonik (Bolonik) became American Valmar's accountant in January 1991.  Bolonik established the books and records of American Valmar.  Based on his conversations with Markovski, he determined the accounting and Federal income tax treatment of American Valmar's receipts and disbursements.  Based on what Markovski told him, he determined the Federal income tax treatment of amounts received by wire transfer by Markovski.  Bolonik prepared American Valmar's and Markovski's Federal income tax returns.

Certificates of assessments and payments maintained by the Internal Revenue Service for American Valmar reflect that the income tax returns of the corporation for the fiscal years at issue were filed as follows:

| Taxpayer | Period | Date Filed |
|---|---|---|
| American Valmar | 6/30/91 | 2/16/93 |
| American Valmar | 6/30/92 | 7/6/94 |
| American Valmar | 6/30/93 | 12/19/94 |

The income tax returns filed by American Valmar for the fiscal years at issue bear date received stamps on their face as follows:

| Taxpayer | Period | Date Received Stamp |
|---|---|---|
| American Valmar | 6/30/91 | 2/16/93 |
| American Valmar | 6/30/92 | None |
| American Valmar | 6/30/93 | 12/19/94 |

The envelopes in which the income tax returns of American Valmar for the fiscal years in issue were mailed to the Internal Revenue Service reflect the below-listed postmark dates:

| Taxpayer | Period | Postmark Date |
|----------|--------|---------------|
| American Valmar | 6/30/91 | 2/12/93 |
| American Valmar | 6/30/92 | None |
| American Valmar | 6/30/93 | 12/15/94 |

American Valmar's income tax returns for 1991, 1992, and 1993, were received by the Internal Revenue Service on February 16, 1993, July 6, 1994, and December 19, 1994, respectively.

OPINION

I.  Introduction

The principal issues in this case involve the proper characterization of various amounts received from abroad by wire transfer into bank accounts of petitioner American Valmar International, Ltd., Inc. (American Valmar) and its principal shareholder, petitioner Valeri Markovski (Markovski).  Respondent disagrees with petitioners' claim that the amounts received by American Valmar did not constitute items of gross income because of American Valmar's obligation to expend those amounts on behalf of its clients.  Respondent also disagrees with petitioners' claim that the amounts received by Markovski did not constitute items of gross income because those amounts were the proceeds of a hoard of rubles accumulated before Markovski emigrated to the United States.  Petitioners place substantial reliance on

Markovski's testimony, while respondent relies substantially on circumstantial evidence that respondent claims negates much, if not all, of Markovski's testimony. We do not agree completely with either party. We also decide a deduction issue with respect to American Valmar and the various additions to tax and penalties. Petitioners bear the burden of proof. See Rule 142(a).

## II. Wire Transfers to American Valmar

During each of its taxable years in issue, American Valmar received substantial deposits into its bank accounts by wire transfers from abroad (the American Valmar deposits). The American Valmar deposits were received principally from countries in the former Soviet bloc. American Valmar argues that it was a commission broker and the American Valmar deposits did not constitute gross income because of its obligation to disburse those deposits as directed by its clients. Respondent agrees both that American Valmar was a commission broker and that refundable deposits do not constitute items of gross income. Respondent is unpersuaded, however, that American Valmar had any bona fide obligation to its clients. Respondent argues that American Valmar's books and records did not adequately establish its liabilities to individual clients, and American Valmar treated some of the funds it received as if they were its own. Respondent adjusted American Valmar's income by treating the American Valmar deposits as gross receipts from sales.

Respondent increased American Valmar's gross income for the years in issue by the excess of the American Valmar deposits received during a year over purchases made and commissions earned during such year:  $1,426,653, $1,507,440, and $32,335, for 1991, 1992, and 1993, respectively (the excess amounts).

We have found that American Valmar had four customers during the years in issue:  Video Computer, Diapazon, Interrosa, and Kond Petroleum (the customers).  Petitioners claim that the customers were the source of the American Valmar deposits and that, until expended on behalf of one of the customers or earned as a commission by American Valmar, the American Valmar deposits belonged to the customers.  Petitioners rely principally on the testimony of Markovski that American Valmar had liabilities to the customers for the unexpended balance of the American Valmar deposits.  Although petitioners did produce some correspondence with three of the customers, petitioners produced no written agreements with any of them.  In its financial records, American Valmar did credit the American Valmar deposits to contracts payable.  Video Computer is identified on some of the wire transfers, but none of the other customers are.  No representative of any of the customers testified.

Petitioners explain their lack of documentary substantiation by explaining that it was the normal business practice for business entities located in the former Soviet Union to deposit funds with foreign businesses without documentary evidence.

Based on the testimony of petitioners' expert, Yakov M. Balakhovsky, an attorney experienced with Russian and Soviet law, petitioners claim the following:

> Russian businesses, as a matter of custom and practice, during the taxable years in issue herein, would deposit funds abroad due to their inability to open foreign bank accounts, as well as the absence of a private banking system in the U.S.S.R. and rampant economic, political and social turmoil in the U.S.S.R.
>
> [L]ittle formal documentation or other legal niceties would accompany such deposits * * * because of the embryonic nature of the Soviet commercial law, the absence of skilled lawyers, and the inability to enforce contractual obligations through government legal channels, due to endemic corruption and the systemic hostility of the Soviet state towards entrepreneurial activity.

Respondent did not challenge petitioners' expert's testimony, and we accept his opinions and find accordingly.

Respondent made a common response to many of petitioners' proposed findings of fact with respect to the existence of the customers and American Valmar's obligations to them: "Objection to the proposed finding of fact in that it is based upon the uncorroborated, self-serving testimony of Valeri Markovski." It is undoubtedly true that many of petitioners' proposed findings of fact are uncorroborated and self-serving. That, however, does not necessarily mean that they are false. Respondent also adverts to the paucity of American Valmar's records and certain seeming inconsistencies in those records as grounds for rejecting all of American Valmar's allegations. We have examined the records and are unconvinced that either their minimal extent or

seeming inconsistencies prove that the customers did not exist or that American Valmar had no obligation to them. Indeed, we find respondent's wholesale rejection of petitioners' proof, even as to the existence of the customers, inconsistent with respondent's requiring American Valmar to include in gross income for each year only the excess of the American Valmar deposits received over purchases made and commissions earned during such year.

Petitioners rely principally on Markovski's testimony, which is uncorroborated, they say, because of business conditions in the former Soviet Union. We give petitioners the benefit of the doubt with respect to business conditions in the former Soviet Union. Nevertheless, in some respects we found Mr. Markovski credible and in some we did not. American Valmar spent at least $57,137 for home furnishings delivered to a condominium apartment (the condominium) that Markovski owned and in which he lived. That amount was charged to contracts payable, and Markovski testified that the expenditure was made at the direction of Diapazon to outfit a bedroom as living space and office for Diapazon employees visiting the United States. After supposedly outfitting the condominium for Diapazon, Markovski sold the condominium, with many of the improvements left behind. Petitioners have not explained what happened to Diapazon's interest in the condominium. We did not find Markovski's testimony, or the testimony of his wife, Lina, credible with respect to the condominium transaction. Also, we did not find

credible Markovski's testimony with respect to the wire transfer to Mila Panarey of $24,500. That sum was received pursuant to an agreement that Ms. Panarey would turn the sum over to Ludmila Piker, her cousin. Ludmila Piker had been a consultant to American Valmar and was Markovski's stepdaughter. Markovski testified that he knew nothing of that transaction other than that he had been instructed by a customer, Interrosa, to wire the money to Ms. Panarey. He also testified that the $24,500 never came back to American Valmar.

Since we found Markovski's testimony to be unconvincing with respect to both the apartment transaction and the Mila Panarey wire transfer, we think it a fair assumption that Markovski (or American Valmar) benefited from both transactions. In the apartment transaction, it was his living quarters that were improved; with respect to the Mila Panarey wire transfer, it was Markovski's step-daughter who ended up with the money. In both cases, the expenditures were charged to the contracts payable account. We find that Markovski benefited from both transactions; we therefore question his assertion that the American Valmar deposits, accounted for by the contracts payable account, were held under an obligation to use them solely for the benefit of the customers. Petitioners have failed to convince us of that fact and, on that basis, we sustain respondent's adjustment with respect to the American Valmar deposits.

III.  American Valmar Additional Deductions

As stated, respondent increased American Valmar's gross income for the years in issue by the excess of the American Valmar deposits received during a year over purchases made and commissions earned during such year.  Respondent disallowed certain of American Valmar's claims of purchases made on behalf of customers as follows:  $338,793, $104,894, and $449,828 for 1991, 1992, and 1993, respectively.  Respondent has conceded $47,500 of the purchases disallowed for 1991 and $50,000 of the purchases disallowed for 1993, leaving at issue $291,293, $104,894, and $399,828 for 1991, 1992, and 1993, respectively.  Although petitioners claim on brief that additional amounts of purchases were conceded by respondent, they have failed to prove any additional concessions.  Apparently believing that all other disallowed purchases have been conceded, petitioners address only $361,500 of the remaining 1993 disallowance of $399,828.

Petitioners first claim that $337,000 of funds attributable to Interrosa was disbursed during American Valmar's 1993 taxable year to a Manufacturer's Hanover bank account in the name of Anatoli Seregin, an officer of Interrosa.  The parties have stipulated transfers in that amount during that year to that bank in that name (the transfer).  In evidence is correspondence purporting to be from Interrosa and authorizing American Valmar to open an account in the name of Anatoli Seregin.  Respondent offers nothing to rebut petitioners' proposed finding that the

transfer was a disbursement of Interrosa's funds other than the claim that the proposed finding "is based on the self-serving testimony of Valeri Markovski."  Although we have doubts about some aspects of Markovski's testimony, there was nothing suspicious about his testimony concerning the transfer.  American Valmar has carried its burden of proving that the transfer was a disbursement to Interrosa, and we so find.  In his notice of deficiency for 1993, respondent states that he is disallowing some of the purchases claimed on the grounds that such amounts were not for ordinary and necessary business expenses or were not paid for the purposes designated.  We assume that the transfer is covered by the purposes-designated-language in respondent's notice, and, since we have found that the transfer was for the purposes designated, we do not sustain the deficiency to the extent it is attributable to the transfer.

Petitioners' second claim relates to the $24,500 wire transfer to Mila Panarey, which they claim was a disbursement at the direction of Interrosa.  We found Markovski's testimony unconvincing with respect to that transaction and conclude that petitioners have failed to carry their burden of proving that the Mila Panarey transfer was a disbursement at the direction of Interrosa.

In addition to the two claims with respect to 1993, petitioners also claim credit for the $57,137 spent with respect

to the condominium.  Petitioners have failed to prove that such amount was disbursed at the direction of Diapazon.

Except with respect to the transfer, respondent's determination of a deficiency is sustained to the extent it relates to respondent's disallowances of purchases.

IV.  Constructive Dividends

During 1991 and 1992, Markovski received seven deposits into his bank accounts by wire transfer from abroad (the Markovski deposits).  Six of those deposits were made in 1991 and totaled $746,340.  The seventh deposit was made in 1992 in the amount of $1,600,000.  Respondent treated the Markovski deposits as if they had been received by (and belonged to) American Valmar and had then been distributed to Markovski with respect to his stock.  Respondent made positive adjustments to American Valmar's income on the basis that the Markovski deposits were items of gross income to American Valmar.[2]  Respondent made positive adjustments in Markovski's income on the basis that the Markovski deposits constituted constructive dividends from American Valmar.[3]

---

[2]    In his notices of deficiency to American Valmar, respondent labels the adjustments to American Valmar's income "Receipts From Shareholder Account".  The adjustments are $613,410 and $1,600,000 for American Valmar's taxable years ending June 30, 1991, and 1992.  Inexplicably, respondent has omitted making an adjustment to American Valmar's 1992 income for the Markovski deposits in the amounts of $52,730 and $80,200 received by Markovski on July 1 and 12, 1991, respectively.

[3]    The adjustment for 1991 totaled $803,477, which is $57,137 greater than the Markovski deposits received during 1991.

(continued...)

Petitioners assigned error to respondent's adjustments, claiming that the Markovski deposits constituted the tax free receipt of a substantial hoard of rubles (the ruble hoard) accumulated before Markovski emigrated to the United States.

Petitioners rely principally on Markovski's testimony and the testimony of Larisa Saltevskiya (Saltevskiya), a close personal friend, to establish the existence and size of the ruble hoard. Petitioners also direct us to a copy of a letter from R.B. Gevorkian, an executive of Diapazon, dated September 17, 1991 (the Gevorkian letter). The Gevorkian letter states Diapazon received $1,172,560 from Markovski in November 1990 and transferred a portion of it to the Chem. 2 account in various amounts, which include all of the Markovski deposits made in 1991. Respondent relies principally on similarities with respect to the source and identifying information between the Markovski deposits and the American Valmar deposits. Respondent disbelieves Markovski's and Saltevskiya's testimony concerning the ruble hoard, pointing out certain inconsistences in the testimony of each.

Again, we must weigh petitioners' less than perfect testimonial evidence against respondent's circumstantial evidence. We have found that Markovski accumulated the ruble

---

[3](...continued)
Apparently, the $57,137 represents the amount American Valmar spent for home furnishings delivered to Markovski's condominium apartment.

hoard before he emigrated from Russia.  No purpose would be served in going into the details of his testimony.  We have considered the inconsistencies pointed out by respondent. Nevertheless, respondent has no effective rebuttal to much of Markovski's narrative of his activities and family history in Russia.  We believe that Markovski did accumulate some substantial amount of wealth before he emigrated to the United States.  Whether the Markovski deposits comprised all or part of the ruble hoard is another question.  Petitioners offered no good explanation for the similarities between the Markovski deposits and the American Valmar deposits.  A similar notation--for equipment contract 14-12-90--accompanies four of the 1991 Markovski deposits, those of April 22, May 24, July 1, and July 12, 1991, in the amounts of $315,591, $133,800, $52,730, and $80,200, respectively, and three of the American Valmar deposits, those of January 25, June 6, and June 21, 1991.  The May 23, 1991, Markovski deposit, in the amount of $113,519, carries the notation:  "By order of: SV Interrousa [sic]."  The May 31, 1991, Markovski deposit, in the amount of $50,500, carries the notation:  "Beneficiary: American Valmar, Intl Co."  We believe that the similarities in notation between the April 22, May 24, July 1, and July 12, 1991, Markovski deposits and certain of the American Valmar deposits and the notations on the May 23 and May 31, 1991, Markovski deposits are evidence that those deposits related to the business of American Valmar.  We accord that

evidence more weight than Markovski's testimony that those deposits were from his ruble hoard, and so find.  We do not find sufficient similarities between the March 5, 1992, Markovski deposit of $1,600,000 and any American Valmar transactions to rebut Markovski's testimony that that deposit was from his ruble hoard, and we so find.

We find that the April 22, May 23, May 24, and May 31 Markovski deposits were constructively received by American Valmar and constitute items of gross income to American Valmar for 1991.  See, e.g., Truesdell v. Commissioner, 89 T.C. 1280, 1300 (1987) ("diverted amounts taxed to a shareholder as constructive dividends also remain fully taxable to the corporation to which attributable").  We see little difference between those deposits and the ones made on July 1 and 12, 1991. Nevertheless, since respondent has not determined any deficiency in American Valmar's 1992 tax on account of those deposits,[4] we shall ignore them with respect to American Valmar.  We find that all of the April 22, May 23, May 24, May 31, July 1, and July 12, 1991, Markovski deposits were distributed to Markovski with respect to his stock.  Since petitioners have failed to prove an insufficiency in American Valmar's earnings and profits, the distributions are dividends includable in Markovski's 1991 gross income.  See secs. 301, 316.

---

[4]    See supra note 2.

The $57,137 that American Valmar spent for home furnishings delivered to the condominium also constitutes a constructive dividend to Markovski, includable in his gross 1991 income.

V.  Additions to Tax and Penalties

    A.  Additions to Tax for Failure To File Return

Respondent determined additions to tax against American Valmar for each of its years in issue under section 6651(a)(1).

Section 6651(a)(1) provides that, in the case of a failure to file an income tax return by the due date, there shall be imposed an addition to tax for such failure of 5 percent of the amount of tax, reduced by timely payments and credits under section 6651(b)(1), for each month or portion thereof during which the failure continues, not exceeding 25 percent in the aggregate unless such failure is due to reasonable cause and not due to willful neglect.  Respondent determined that American Valmar's income tax return for 1991, due on September 16, 1991, was 17 months delinquent and that its 1992 and 1993 income tax returns, due (on account of extensions) on March 15, 1993 and 1994, respectively, were not filed until July 6, 1994, and December 19, 1994, respectively.  We have found that American Valmar's income tax returns for 1991 through 1993 were received by the Internal Revenue Service on February 16, 1993, July 6, 1994, and December 19, 1994, respectively.  We have done so based on respondent's records and the other information set forth in our findings of fact.  Petitioners' evidence of timely filing

consists of the testimony of Simon Bolonik (Bolonik), by whose office the returns were filed and who testified that the returns were mailed one week before the due dates.  Bolonik testified: "Mr. Markovski was one of my oldest clients and I basically remember where I put -- if I mailed it [the return] or not.  I would take special care in mailing them."  We found Bolonik's testimony inexact and unconvincing, and we accord it no weight. Moreover, two of the returns bear postmarks well after the relevant due date.  The returns in question were not timely received by the Internal Revenue Service, and petitioners have failed to satisfy the requirements of section 7502(a) that timely mailing constitutes timely filing.  We find that the returns in question were filed on the dates received by the Internal Revenue Service.  The returns were, thus, not timely, and petitioners have failed to show reasonable cause and lack of willful neglect. Respondent's determinations of additions to tax under section 6651(a) are sustained, adjusted only to take into account the deficiencies redetermined by us.

B.  Accuracy-Related Penalty

Respondent determined penalties against American Valmar and Markovski for each of their respective years in issue under section 6662(a).

Section 6662(a) provides for the imposition of an accuracy-related penalty equal to 20 percent of any portion of an underpayment attributable to, among other things, any substantial

understatement of income tax. Sec. 6662(a) and (b)(2).[5] An understatement is "substantial" when the understatement for the taxable year exceeds the greater of (1) 10 percent of the tax required to be shown or (2) $5,000 ($10,000 in the case of a corporation). Sec. 6662(d)(1)(A) and (B). The understatement is reduced to the extent that the taxpayer has (1) adequately disclosed his or her position, or (2) has substantial authority for the tax treatment of an item. Sec. 6662(d)(2)(B). Additionally, no penalty is imposed with respect to any portion of an understatement as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1).

Petitioners do not claim adequate disclosure on their returns. They do claim substantial authority. However, in making that claim, they refer generally to the portions of their brief containing their arguments that neither a deposit nor a taxpayer's receipt of his own funds is an item of gross income and the expenditures in question were made by American Valmar as an agent for its clients. We have rejected the factual basis of petitioners' claim, and, thus, what authority they cite is not relevant to the facts of this case and cannot constitute

---

[5] Respondent determined an alternative basis for the penalties imposed by sec. 6662 on account of negligence or disregard of rules and regulations. See sec. 6662(a) and (b). Respondent failed to address that alternative basis on brief, so we will assume that respondent has abandoned that alternative. See Bernstein v. Commissioner, 22 T.C. 1146, 1152 (1954), affd. 230 F.2d 603 (2d Cir. 1956); Lime Cola Co. v. Commissioner, 22 T.C. 593, 606 (1954); Roberts v. Commissioner, T.C. Memo. 1996-225.

substantial authority.  See <u>Antonides v. Commissioner</u>, 91 T.C. 686, 702-703 (1988) (cases that are factually distinguishable are not substantial authority), affd. 893 F.2d 656 (4th Cir. 1990); see also <u>Estate of Reinke v. Commissioner</u>, 46 F.3d 760, 765 (8th Cir. 1995), affg. T.C. Memo. 1993-197.

Petitioners also claim that, with respect to any underpayment, there was reasonable cause and each acted in good faith.  Petitioners argue that both elements, reasonable cause and good faith, are established by Markovski's ignorance of the law and reliance on his tax adviser, Bolonik.  Section 1.6664-4(b), Income Tax Regs., states:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances.  The most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability.  Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge and education of the taxpayer.  * * *  Reliance on * * * the advice of a professional (such as an appraiser, attorney or accountant) does not necessarily demonstrate reasonable cause and good faith.  * * * Reliance on * * * professional advice * * * constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith.  * * *

Bolonik's testimony clearly establishes that he both determined the tax treatment of the American Valmar deposits and the Markovski deposits (and related items) and prepared the petitioners' returns.  We can, thus, assume that the petitioners relied on him in determining their tax liabilities.  Bolonik's

testimony is also clear that he determined the tax treatment of the American Valmar and Markovski deposits based on what Markovski told him about the nature of those deposits. With respect to the American Valmar deposits, Bolonik testified that, in setting up American Valmar's books and records, he had conversations with Markovski about the nature of the corporation's business and the books and records reflected those discussions. With respect to the Markovski deposits, Mr. Bolonik testified that he believed that those deposits did not constitute items of gross income during the years received based on Markovski's statements to him that those sums had been earned before Markovski moved to the United States. In substantial part, petitioners have failed to prove their version of the facts concerning the American Valmar and Markovski deposits. Bolonik's advice, thus, was faulty, and petitioners can rely on it to establish reasonable cause and good faith only if such reliance was reasonable and they acted in good faith. Reasonable cause and good faith may be established by a showing of an honest misunderstanding of fact. Petitioners have failed to convince us of what actually transpired here. They have, thus, failed to convince us that they honestly misunderstood any facts. We are not convinced--i.e, petitioners have failed to prove--that there was reasonable cause for their underpayment and that they acted in good faith in determining their income tax liabilities with respect to the American Valmar and Markovski deposits. We

sustain respondent's determinations of penalties under section 6662 subject only to modification with respect to the deficiencies as redetermined.

<u>Decisions will be entered under Rule 155</u>.