AMERICAN VALMAR INTERNATIONAL LTD., INC. & Valeri Markovski, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Nos. 99–4169, 99–4170, 99–4171.

United States Court of Appeals, Second Circuit.

Argued: May 31, 2000

Decided: Oct. 04, 2000

Ira B. Stechel (Thomas J. Fleming, of counsel), Olshan Grundman Frome Rosenzweig & Wolosky LLP, New York, New York, for Petitioners–Appellants.

Paula M. Junghans, Acting Assistant Attorney General (Richard Farber and Karen D. Utiger, Attorneys, Tax Division, Department of Justice, of counsel), Washington, D.C., for Respondent–Appellee.

* The Honorable Charles L. Brieant, United States District Judge for the Southern District

Before: WINTER and PARKER, Circuit Judges, and BRIEANT, District Judge.*

WINTER, Circuit Judge:

American Valmar International Ltd., Inc. ("Valmar") and Valeri Markovski ("Markovski") appeal from a decision of Tax Court Judge Halpern finding deficiencies and imposing accuracy-related and delinquency penalties for the taxable years 1991, 1992, and 1993. *See American Valmar Int'l Ltd. v. Commissioner,* 76 T.C.M. (CCH) 911 (1998) (unpublished memorandum opinion).

On appeal, Valmar contends that the Tax Court erred in holding that: (i) customer funds deposited with Valmar were taxable income to Valmar; (ii) Valmar's taxable income could not be reduced by various deductions; and (iii) Valmar was subject to accuracy-related and delinquency penalties. Markovski contends that the Tax Court erred in holding that he realized constructive dividends from expenditures by Valmar and from certain wire transfers. He also challenges the imposition of accuracy-related penalties. We agree with Valmar that customer funds on deposit to be used to purchase goods for a customer should not have been included as taxable income. Rather, only commissions earned by Valmar and that portion of the deposits that Valmar was not obligated to repay or use for a customer's benefit should have been included. We remand for further findings. We affirm the Tax Court in all other respects save for various matters affected by our holding that genuine customer deposits were not income to Valmar.

## BACKGROUND

Markovski is the sole shareholder of Valmar, a New York corporation. He was born in Dniepepetrovsk, U.S.S.R., immi-

of New York, sitting by designation.

grated to the United States, and is now a citizen. During the tax years in question, Valmar was a commission broker, purchasing American goods on behalf of four customers in the former Soviet Union. The present dispute arose when the Commissioner of Internal Revenue issued notices of deficiency to both Valmar and Markovski alleging underpayments in federal income tax, as well as additions to tax, for the 1991 tax year with respect to Markovski, and the 1991, 1992, and 1993 tax years with respect to Valmar.

a) *Valmar's Customer Account*

During the tax years in question, Valmar's less-than-comprehensive records recorded various wire transfers in an "accounts-payable-contracts" account (hereafter "customer account"). It claims that the entirety of the customer account consisted of funds deposited by customers to be used to purchase goods on their behalf. The funds were held in interest-bearing accounts or used to purchase U.S. Treasury bills until disbursed. Valmar retained all interest earned. At the end of each year, the account reflected debits for purchases made by Valmar on behalf of the customers and the commissions earned by Valmar. On its tax returns, Valmar did not report as income the balance of deposits received during a year after debiting expenditures for purchases on customers' behalf and commissions earned (hereafter "year-end balances"). These balances amounted to $1,426,653, $1,507,440, and $32,335 for 1991, 1992, and 1993, respectively. Rather, Valmar included as income only the amount of its commissions, which ranged between five and eight percent of the gross purchase price of the exported goods. The Commissioner contends that the entirety of the funds constituted taxable income to Valmar because, in her view, the funds were not held solely for the benefit of Valmar's customers. The Tax Court agreed.

However, the Tax Court did not hold that the funds were income to Valmar disguised as customer deposits. Rather, it found that Valmar was in fact a commission broker and that at least some of the funds transferred by its customers were intended—save for the payment of commissions—to be used to purchase goods on behalf of the customers. Nevertheless, it inferred from two transactions claimed by Valmar as deductions that year-end balances in the customer account were in their entirety income to Valmar.

In the first transaction, Valmar debited $57,137 to a customer account in 1991 for improvements to a condominium apartment owned by Markovski and his wife. They testified that the improvements were undertaken on behalf of a customer who wished to use the apartment as a living space and office for its employees when they visited the United States. The Tax Court discredited this testimony and found that the improvements were undertaken for Markovski's benefit. It therefore agreed with the Commissioner that the debited amount should have been included in Valmar's gross income and attributed to Markovski as a constructive dividend. In the second transaction, Valmar debited $24,500 to the customer account in 1993 pursuant to what Markovski said were instructions from the customer to transfer the funds to an individual named Mila Panarey. The Tax Court again discredited Markovski's testimony because it found that the funds were eventually given to a woman named Ludmila Piker, a former consultant for Valmar and Markovski's step-daughter. It therefore agreed with the Commissioner that the amount should have been included in Valmar's gross income.

Based on its findings regarding these two transactions, the Tax Court went on to hold that the year-end balances should have been included in Valmar's gross income. In doing so, the Tax Court reasoned that the two transactions caused it to doubt whether Valmar held the remain-

der of the customer account "under an obligation to use [the funds therein] solely for the benefit of the customers."

### b) *The "Ruble Hoard"*

During the tax years in question, Markovski received other wire transfers directly into his personal bank accounts. Six deposits totaling $746,340 were made in 1991, and one deposit of $1,600,000 was made in 1992. Markovski argues that these deposits were not income but represented the transfer of a "ruble hoard" that he had earned and amassed while living in the former Soviet Union. Markovski testified that his contacts abroad wired him the funds labeled as business transactions only to evade currency controls in the former Soviet Union. Although the Tax Court agreed that Markovski accumulated substantial wealth before emigrating, it concluded that notations on the six 1991 transfers demonstrated that they were not personal funds amassed in Russia but were related to Valmar's business. The Tax Court therefore included the six in Valmar's income and treated them as a constructive dividend to Markovski.[1] The seventh wire transfer in 1992 was treated as reflecting the ruble hoard.

### c) *Penalties*

Finally, because the Commissioner asserted that Valmar and Markovski had substantially understated their income for the tax years in question, it assessed accuracy-related penalties against both of them. *See* I.R.C. § 6662 ("[T]here shall be added to the tax an amount equal to 20 percent of the portion of the underpayment ... which is attributable to ... [a]ny substantial understatement of income tax."). The Commissioner also determined a delinquency penalty against Valmar because its returns were overdue for the three tax years in question. *See* I.R.C. § 6651 (adding five-percent penalty each month for late filing absent reasonable cause). The Tax Court upheld all of the penalties, although it adjusted them to take into account its recalculation of the deficiencies.[2] This appeal followed.

## DISCUSSION

We must uphold the Tax Court's factual findings unless they are clearly erroneous, *see Addington v. Commissioner,* 205 F.3d 54, 57 (2d Cir.2000), and "particularly strong deference" is owed where the trial court bases its findings upon its determination of witnesses' credibility. *Mathie v. Fries,* 121 F.3d 808, 812 (2d Cir. 1997) (quoting *Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57, 64 (2d Cir.1992)). We of course review the Tax Court's conclusions of law *de novo. See Texasgulf, Inc. v. Commissioner,* 172 F.3d 209, 214 (2d Cir.1999).

In general, "[t]he Commissioner's determination of an income tax deficiency enjoys a presumption of correctness, requiring a taxpayer petitioning for review to prove it wrong." *Douge v. Commissioner,* 899 F.2d 164, 167 (2d Cir.1990) (citing *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933)); *see* Tax Ct. R. 142 (placing burden of proof on petitioner).[3]

---

1. Two of the six transfers were, as the Tax Court noted, "[i]nexplicably ... omitted" in the Commissioner's adjustment to appellants' income. Therefore, the total adjustment made was $613,410, not $746,340.

2. Appellants had challenged the Commissioner's inclusion in Valmar's gross income of an additional $337,000. Valmar argued that it had transferred that amount to the bank account of one of its customers pursuant to the customer's request. The Tax Court agreed with Valmar and did not sustain the deficiency with regard to those funds.

3. In parts of their brief—with respect to the ruble hoard in particular—appellants argue that the burden should be shifted to the Commissioner. *See Gold Emporium, Inc. v. Commissioner,* 910 F.2d 1374, 1378 (7th Cir.1990) (holding Commissioner's presumption of correctness inapplicable where assessment lacks "rational foundation or is arbitrary and erroneous") (internal quotations and citation omitted). The distinction suggested in *Gold*

### a) *Valmar's Customer Account*

Appellants claim that the Tax Court erred in holding that the year-end balance of customer deposits received in a tax year by Valmar constituted taxable income. This dispute concerns whether the deposits were at Valmar's disposal to use for its own benefit or whether Valmar had an obligation either to return unused funds to its customers or to hold them for later purchases on behalf of customers. One might reasonably harbor doubt regarding the nature of the customer account because of the paucity of intelligible records kept by Valmar. However, the Tax Court held, "[w]e have examined the records and are unconvinced that either their minimal extent or seeming inconsistencies prove that the customers did not exist or that ... Valmar had no obligations to them." Nevertheless, because of the two disputed transactions described above—the improvements to the condominium and the wire transfer to Panarey—the Tax Court expressed uncertainty as to whether any of the deposits were "held under an obligation to use them solely for the benefit of the customers." Although the total value involved in the two transactions was only $81,637, the Tax Court upheld the Commissioner's inclusion of all the year-end balances in the customer account for each of the tax years in question, adding $2,966,428 to Valmar's taxable income. We disagree that transactions amounting to 2.8% of the total held by Valmar justified inclusion of all the balances in the account as income.

■ Customer deposits over which the recipient does not have "complete dominion" are not taxable as income upon their receipt. *See Commissioner v. Indianapolis Power & Light Co.*, 493 U.S. 203, 209, 110 S.Ct. 589, 107 L.Ed.2d 591 (1990). *Indianapolis Power* involved a utility company that required deposits from customers with poor credit as security for the extension of credit. Customers could obtain refunds of their deposits upon demonstrating adequate credit or upon termination of their service. In holding that the deposits should not have been included in the utility company's taxable income, the Court held that the "question ... cannot be resolved simply by noting that respondent derives some economic benefit from receipt of these deposits." *Id.* at 208–09, 110 S.Ct. 589. Rather, the test is whether the recipient enjoys "complete dominion" over the deposits or whether the "deposits were acquired subject to an express 'obligation to repay.'" *Id.* at 209, 110 S.Ct. 589. "The key is whether the taxpayer has some guarantee that he will be allowed to keep the money." *Id.* at 210, 110 S.Ct. 589. The Court also distinguished between an advance payment, which "protects against the risk that the purchaser will back out of the deal before the seller performs" and a deposit, which entails "no commitment to purchase a specified quantity of electricity, or indeed to purchase any electricity at all." *Id.* at 210–11, 110 S.Ct. 589.

■ The Commissioner argues that *Indianapolis Power* is inapposite because Valmar did not show that the funds at issue were either to be used for the customers or to be returned. However, the Tax Court specifically and not unreasonably found that Valmar had real customers and had at least some obligations to them regarding the funds in the customer account. As in *Indianapolis Power*, the deposits by Valmar's customers were not commitments to purchase a specified quantity of goods. *See id.* Indeed, the Tax Court found that "[a]t the time ... Valmar received funds from customers, it did not

---

*Emporium* seems somewhat elusive. If a taxpayer can show that a deficiency assessment lacks a "rational foundation or is arbitrary and erroneous," it would seem that that showing would itself overcome the presumption of correctness and the additional argument that the burden has shifted to the Commissioner would be superfluous. In any event, we see no such demonstrative lack of merit in the assessment that would induce us to apply *Gold Emporium* 's analysis to this case.

necessarily have instructions as to how those funds were to be used." Just as in *Indianapolis Power*, where "IPL's right to keep the money depends on the customer's purchase of electricity, and upon his later decision to have the deposit applied to future bills," *id.* at 211, 110 S.Ct. 589, Valmar's right to use at least some of the excess funds in the customer account depended on whether customers requested additional goods or a refund. Moreover, the "question ... cannot be resolved simply by noting that respondent derives some economic benefit from receipt of these deposits." *Id.* at 208–09, 110 S.Ct. 589. The test is, therefore, not whether the funds inure exclusively to the customer's benefit. Rather, the proper test is whether Valmar had an obligation to use them for the customer or repay any excess, or, conversely, whether it had the right to use them on its own behalf. *See Houston Indus. Inc. v. United States*, 125 F.3d 1442, 1445 (Fed.Cir.1997) (holding overrecoveries by utility company not included in taxable income where used to offset against underrecoveries because such offsets have same effect as refund); *Kansas City Southern Indus., Inc. v. Commissioner*, 98 T.C. 242, 261, 1992 WL 41206 (1992), *acq. in part and nonacq. in part*, 1994–45 I.R.B. 4 (1994) ("Both the Supreme Court and this Court have rejected contentions by [the I.R.S.] that control over the deposits, unrestricted use of the funds, and nonpayment of interest negated the obligation to repay or demonstrated complete dominion over the deposits."); *Oak Indus., Inc. v. Commissioner*, 96 T.C. 559, 569–70, 575, 1991 WL 47410 (1991) (holding security deposits obtained by television subscription service, which were usable as offsets against services and refundable on termination, were not taxable income, even though they were not segregated and even though provider could use them as it saw fit); *cf. Commissioner v. Tufts*, 461 U.S. 300, 307, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983) ("When a taxpayer receives a loan, he incurs an obligation to repay that loan at some future date. Because of this obligation, the loan proceeds do not qualify as income to the taxpayer.").

In reversing, we overturn the factual findings of the Tax Court in only a limited way. The Tax Court's finding that the condominium improvements and the wire transfer to Panarey were not related to Valmar's business simply does not support the inference that funds in the customer account were entirely available for it to use on its own behalf. Given the Tax Court's finding that Valmar had real customers and real obligations to those customers, at least some, if not all, of the funds in the year-end balances were true customer deposits that Valmar had an obligation to refund or use for the customers. The condominium and Panarey transactions do not undermine that conclusion. For example, it is to be expected that a commission broker will receive some of the funds deposited by customers as compensation, and those transactions may therefore be disguised commissions. Moreover, even if a commission broker diverted some customer funds unlawfully, the entire amount of deposits would not thereby become taxable income. To be sure, the frequent use of funds in one's possession for personal purposes may be evidence of dominion. However, the inference drawn here was based on two small transactions over three years and is not consistent with the finding that Valmar had real customers and real obligations regarding the funds.

It does not follow, however, that all of the year-end balances in Valmar's customer account, save for the condominium and Panarey expenditures, are not taxable. Because the Tax Court's inquiry ended with its finding that two of the Valmar expenditures were not business related, it did not inquire into whether there are reasons to conclude that other portions of the year-end balances were subject to Valmar's complete control and therefore taxable. On remand, the Tax Court should, therefore, determine what portion, if any, of the $2,966,428 is taxable according to the legal standard set out in this opinion.

■ Valmar also argues that the Tax Court erred in sustaining the Commissioner's disallowance of additional deductions of $291,293, $104,894, and $38,828 for the 1991, 1992, and 1993 tax years, respectively. Specifically, Valmar contends that these amounts had been conceded by the Commissioner as deductible. The Tax Court, in an order denying appellants' motion for reconsideration, rejected Valmar's arguments as to the alleged concessions and held that appellants had not otherwise substantiated their right to the deductions at trial. Given that taxpayers bear the burden of establishing their rights to deductions, see *American Dispenser Co. v. Commissioner*, 396 F.2d 137, 138 (2d Cir. 1968), and that the Tax Court's findings are amply supported by the evidence, we agree with the Tax Court that Valmar has not met its burden with regard to the claimed deductions. (Of course, the deduction issues are moot if none of the year-end balances in the customer account are taxable income.)

b) *The Ruble Hoard*

■ The Tax Court's findings as to the wire transfers to Markovski and the claim of a ruble hoard are factual findings based on its assessment of Markovski's credibility and notations on the wire transfers. Given the deference accorded to a trier's credibility determinations, we cannot say that the Tax Court's holding that the six 1991 deposits did not represent part of Markovski's previously acquired ruble hoard was clearly erroneous. We therefore affirm the Tax Court's holding that the 1991 deposits should have been included as both income to Valmar and a constructive dividend to Markovski. *See Truesdell v. Commissioner*, 89 T.C. 1280, 1300, 1987 WL 258105 (1987) ("[D]iverted amounts taxed to a shareholder as con-

structive dividends also remain fully taxable to the corporation to which attributable."); *cf. Chong v. Commissioner*, 68 T.C.M. (CCH) 794 (1994) (unpublished memorandum opinion) (holding that cash hoard acquired before emigration is not included in taxable income). As previously noted, we also affirm the Tax Court's determination that the $57,137 spent to improve the condominium inured to Markovski's benefit and was therefore a constructive dividend.[4]

c) *Penalties*

■ Appellants also argue that the Tax Court erred in sustaining the Commissioner's assessment of a delinquency penalty against Valmar and understatement penalties against both Valmar and Markovski. Section 6651 of the Tax Code provides for the imposition of an additional five-percent charge each month on the amount of taxes due (not to exceed twenty-five percent in the aggregate) for failure to file a return, unless the taxpayer can show reasonable cause and the absence of willful neglect. *See* I.R.C. § 6651. Factors constituting reasonable cause include "unavoidable postal delays, death or serious illness of the taxpayer ... or reliance on the mistaken opinion of a competent tax advisor ... that it was not necessary to file a return." *Marrin v. Commissioner*, 147 F.3d 147, 152 (2d Cir.1998). The taxpayer bears the burden of proving that a return was timely filed. *See Sullivan v. Commissioner*, 985 F.2d 704, 706 (2d Cir. 1993); Tax Ct. R. 142(a). The Tax Court based its conclusion that Valmar's returns were untimely filed on a weighing of the testimony of appellants' accountant regarding when the returns were mailed against the Commissioner's evidence, which included postmarks. It was not clearly erroneous for the Tax Court to find

---

4. Appellants contend that if the customer deposits and wire transfers are not included in Valmar's income, Valmar's earnings and profits for the tax years in question are insufficient to support the constructive dividends to Markovski. Because we have not reversed the Tax Court as to the "ruble hoard" transfers and cannot predict what portion of the deposits the Tax Court will find to be excluded from Valmar's taxable income, we leave this issue to future proceedings and express no view on it.

that the accountant's testimony was "inexact and unconvincing," and we therefore affirm the imposition of the delinquency penalty against Valmar.

Section 6662 of the Tax Code provides for a penalty of twenty percent of the portion of the underpayment where the underpayment of tax is due to, among other things, the substantial understatement of income tax. *See* I.R.C. § 6662(b)(2). Under the Code, "there is a substantial understatement of income tax ... if the amount of the understatement ... exceeds the greater of (i) 10 percent of the tax required ... or (ii) $5,000 [$10,000 in the case of corporations]." I.R.C. § 6662(d)(1). However, no penalty will be imposed if the understatement is attributable to, among other things, the fact that there is or was substantial authority for the taxpayer's treatment of the item. *See* I.R.C. § 6662(d)(2)(B); Treas. Reg. § 1.6662–4(d)(2) ("The substantial authority standard is an objective standard involving an analysis of the law and application of the law to relevant facts."). Given our present decision, we reverse the imposition of accuracy-related penalties with respect to the year-end balances in the customer account, subject to the Tax Court's revisiting the issue with regard to portions of the balances found to be taxable on remand.

The accuracy-related penalty imposed against Markovski was due to his failure to include on his return the amounts the Commissioner deemed were constructive dividends. Because we have affirmed the Tax Court's treatment of those items without difficulty in the light of the paucity of documentary support from Markovski, we affirm the accuracy-related penalty imposed against Markovski for his failure to include them.

## CONCLUSION

For the reasons stated above, we affirm the Tax Court's decision with regard to the constructive dividends and accuracy-related penalty imposed against Markovski, the delinquency penalty imposed against Val-

mar, and the conclusion that the condominium improvements and the Panarey wire transfer were not business-related. However, we remand for further findings on what portion of the year-end balances in the customer account should have been included in Valmar's taxable income and, once those findings have been made, whether an accuracy-related penalty against Valmar remains appropriate.