Leonard GARMENT, Plaintiff–Third–Party Defendant–Appellant,

v.

Donald J. ZOELLER; Malcolm Schade; and Arthur F. McMahon, Jr., individually in their respective capacity as Liquidating Partners of Mudge Rose Guthrie Alexander & Ferdon and individually as Partners of Mudge Rose Guthrie Alexander & Ferdon, Defendants–Third–Party Plaintiffs–Appellees,

v.

Nathan Abramowitz; John L. Altieri, Jr.; Ned H. Bassen; Isaac D. Benkin; Jonathan Birenbaum; John G. Bove; Timothy T. Brock; Susan M. Campbell; Charles E. Carey; Alan F. Cariddi; Joseph J. Carroll; Joel E. Cohen; Stephen T. Cole; Elwood F. Collins, Jr.; Kenneth E. Conboy; Terrence J. Connolly; Christopher F. Corr; Michael P. Daniels; J. William Dantzler; Frederick M. Danziger; Francis K.

Decker, Jr.; Martin J. Dockery; Richard K. Eaton; Donald H. Elliott; Theodore N. Farris; Robert E. Ferdon; James J. Florio; James G. Frangos; David M. Friedman; Thomas G. Gallatin; Gerrit Gillis; Robert J. Gillispie; F. Susan Gottlieb; Judah Gribetz; Robert J. Gunther, Jr.; Michael J. Hannigan; John D. Hawkins; Rita A. Hernandez; Roderick M. Hills; Jeffrey Hirsch; Dana W. Hiscock; H. Sidney Holmes; David P. Houlihan; Donald L. Hunt; James V. Kearney; Charles B. Keefe; John T. Kelly; John J. Kirby, Jr.; Paul R. Koepff; Richard L. Kornblith; Stanford G. Ladner; Harold G. Levison; Martin J. Lewin; I. Lewis Libby; Robert A. Longman; Walter P. Loughlin; Carl F. Lyon, Jr.; Arthur J. Mahon; James P. Marlin; George J. Martin, Jr.; Takashi Matsumoto; Bruce C. Mee; Roy K. Meilman; Robert B. Michel; Richard J. Miller; Edmond P. Murphy; Shelley B. O'Neill; Richard H. Nicholls; N. David Palmeter; Douglas M. Parker; Glenn R. Paulsen; Michael J. Perrucci; Jeffrey L. Piemont; Anne Adams Rabbino; Mitchell H. Rapaport; Clayton S. Reynolds; Fabrice Rue; Thomas C. Russler; Laurence V. Senn, Jr.; Robert Sidorsky; Arnold H. Tracy; David A. Vaughan; Mary Ann Walker; Christopher M. Waterman; and Neil T. Wolk, Third–Party Defendants.

Docket No. 01–7833.

United States Court of Appeals, Second Circuit.

May 24, 2002.

Robert R. Lewis, New York, NY; Suzanne Garment, New York, NY, of counsel, for Plaintiff–Third–Party Defendant–Appellant.

Malcolm R. Schade, New York, NY; Arthur S. Olick, Anderson, Kill & Olick, P.C., New York, NY, on the brief, Donald J. Zoeller, New York, NY, of counsel, for Defendants–Third–Party Plaintiffs–Appellees.

Present VAN GRAAFEILAND, MESKILL and B.D. PARKER, Jr., Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and hereby is AFFIRMED.

Plaintiff-third-party defendant-appellant Leonard Garment appeals from a judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge* ), dismissing his breach of contract claims following a bench trial.

## BACKGROUND

In July 1993, Garment commenced negotiations with Donald Zoeller and John F. Kirby, both then members of the law firm Mudge Rose Guthrie Alexander & Ferdon, regarding re-joining Mudge Rose to manage the firm's Washington, D.C.'s office. During the negotiations, Garment voiced concerns that a move to Mudge Rose would result in the loss of his pension plan with his current law firm, Dickstein Shapiro & Morris. Zoeller and Kirby offered to replace the Dickstein Shapiro pension plan with a two-part arrangement by which Mudge Rose would purchase a $1,000,000 life insurance policy payable to Garment's wife and would provide annual retirement benefits in the amount of $50,000 should Garment retire after turning seventy-five. In a July 16, 1993 memorandum to the partnership of Mudge Rose, Zoeller recommended adoption of this substitute pension arrangement. Garment signed a Mudge Rose Partnership Agreement and was admitted as a salaried partner as of September 1, 1993. Mudge Rose paid the first premium on Garment's life insurance policy in November 1993.

On October 2, 1995, Mudge Rose voted to dissolve and established a Liquidation Committee composed of defendants Zoeller, Malcolm Schade, and Arthur McMahon. After Garment resigned on October 20, 1995, Zoeller confirmed in an October 23, 1995 letter to Garment that "the resignation does not affect, jeopardize or diminish any rights you have in the arrangement with Mudge Rose for $1 million life insurance." In July 1996, the Liquidation Committee decided that the firm would be unable to pay the premiums on the life insurance policy.

Garment then brought suit against Zoeller, Schade, and McMahon as members of the Liquidation Committee and in their individual capacities, alleging breach of a promise to purchase and maintain the policy and the pension benefits. After dismissing the claims against the defendants in their capacities as members of the Liquidation Committee and the claims relating to Garment's pension benefits, the District Court conducted a bench trial on the remaining claims. In June 2001, the District Court dismissed those claims on the grounds that the defendants "provided persuasive extrinsic evidence that the agreement to pay for the insurance policy was a 'Pension Plan' within the meaning of the Partnership Agreement" and that the obligation to pay did not survive the firm's dissolution.

## DISCUSSION

■ Garment's primary contention is that the agreement to pay life insurance was a separate contract, independent from and not subject to the Partnership Agreement. The legal conclusion of whether the parties decided to bind themselves is reviewed *de novo,* while the factual findings underlying that conclusion are reviewed for clear error. *Aceros Prefabricados, S.A. v. TradeArbed, Inc.,* 282 F.3d 92, 97 (2d Cir.2002); *see Apex Oil Co. v. Vanguard Oil & Serv. Co.,* 760 F.2d 417, 421–22 (2d Cir.1985) (reviewing for clear error the district court's factual findings, following a bench trial, underlying its conclusion that the parties formed a contract).

Under Article VII, Section 7 of the Partnership Agreement,

> [A]ll amounts payable or in respect of withdrawing, retiring or deceased Partners under this Agreement or prior or subsequent Partnership Agreements (other than amounts payable pursuant to Section 2 and 3 of this Article [which pertain to pro rata earnings and partner capital] and similar provisions of prior or subsequent Partnership Agreements), including any make-up payments required by the proviso below, shall be subject to a pro rata reduction so that the aggregate of such payments in any one Fiscal Year shall not exceed 10% of the Firm's Net Earnings for such Fiscal Year . . . .

Accordingly, if the life insurance plan was subject to the Partnership Agreement, Mudge Rose would not be responsible for paying for the plan because such payment would exceed 10% of the firm's net earnings for the fiscal year. Because Article VII, Section 1 provides that Garment "shall [not] have any rights with respect to the assets or income of the Firm, except as provided in this Article," the determination of whether the life insurance policy was subject to the Partnership Agreement depends on whether the policy was authorized in Article VII. In Article VII, Section 5, the Partnership Agreement discusses "pension plans" that partners may be eligible to receive. Therefore, although the Partnership Agreement makes no mention of "life insurance," "pension plans" are clearly subject to the limitations of Article VII, Section 7.

The District Court concluded that the Partnership Agreement was ambiguous as to whether the life insurance policy was subject to its terms. We review *de novo* a district court's determination of whether contract terms are ambiguous. *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir.2002). Under New York law, "[t]he language of a contract is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *Krumme v. Westpoint Stevens, Inc.*, 238 F.3d 133, 138–39 (2d Cir.2000) (quoting *Seiden Assocs. v. ANC Holdings*, 959 F.2d 425, 428 (2d Cir.1992)). We find the District Court's finding of ambiguity to be correct. The Partnership Agreement specifically mentions, but fails to define, "pension plans." Since "pension plans," without any other limitation, might or might not include life insurance policies, the term is ambiguous.

Garment's contention that the July 16, 1993 Mudge Rose memorandum is a contract separate from the Partnership Agreement that provides the payment of life insurance premiums is unpersuasive. The memorandum was not signed and was a recommendation to the firm's partnership. It stated that the life insurance policy would "replace" and "provide a substitute for a pension plan which Garment must surrender when he leaves Dickstein." This language suggests that the life insurance policy was intended to be a pension plan. Furthermore, the memorandum at no point states that Garment's life insurance policy would fall outside the Partnership Agreement, which barred compensation not authorized by the Agreement.

We review a district court's finding regarding the meaning of ambiguous terms for clear error. *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir.1999). If there are two permissible views of the evidence, a district court's choice between them can never constitute clear error. *E.R. Squibb & Sons, Inc. v. Lloyd's Cos.*, 241 F.3d 154, 174 (2d Cir.2001). The District Court concluded, "I find all of the arguments, terms and conditions upon which the parties would practice law as partners were subject to the Partnership Agreement.

Plaintiff's insurance policy constituted a 'Pension Plan' within the meaning of the Partnership Agreement. Under the circumstances of the Firm's dissolution and because there are no net earnings of the Firm, plaintiff has no right to the payments of premiums on the insurance policy." This conclusion was not clearly erroneous especially since it relied heavily on the District Court's analysis of the trial testimony. *See Am. Valmar Int'l Ltd., Inc. v. Comm'n of Internal Revenue*, 229 F.3d 98, 101 (2d Cir.2000) (" '[P]articularly strong deference' is owed where the trial court bases its findings upon its determination of witnesses' credibility.") (quoting *Mathie v. Fries*, 121 F.3d 808, 812 (2d Cir.1997)).

Garment also argues that the District Court improperly placed the burden on him of disproving an affirmative defense raised by the defendants. Whether a district court properly allocated the burden of proof is a question of law reviewed *de novo. Coalition To Save Our Children v. Bd. of Educ.*, 90 F.3d 752, 759 (3d Cir.1996); *In re Sorah*, 163 F.3d 397, 400 (6th Cir.1998). Garment points to the District Court's statements that, "Plaintiff . . . has failed to carry his burden of proving that the agreement to provide life insurance was separate from and not subject to the Partnership Agreement," and that, "Plaintiff has failed to carry his burden of proving that the insurance policy was not subject to the Partnership Agreement . . . ."

Even though the defendants cited the Partnership Agreement in two affirmative defenses, the proper placement of the burden of proof comes not from the pleadings, but from the law. *See First Tennessee Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 329 (6th Cir.2001) ("[T]he fact that [the defendant] initially raised the issue of [the plaintiff's] non-performance as an affirmative defense is not dispositive. We look to the law, not to the pleadings, when determining where the burden of proof rests."). The defendants offered a Partnership Agreement signed by Garment. Therefore, to prove the existence of a binding contract, Garment needed to show that the memorandum, as opposed to the Partnership Agreement, governed. Garment was not relieved of the necessity of proving this point simply because the defendants described it as an affirmative defense.

We have considered Garment's other contentions on this appeal and find them to be without merit. Accordingly, the judgment of the District Court is hereby AFFIRMED.